McIlvaine, C. J.,
dissenting. I am constrained to dissent from the judgment in this case. The original action was simply to foreclose a mortgage. The exact question *308 may be thus stated : Is Mrs. Faxon, the payee of the note, estopped from denying McClelland’s title and ownership of the note and mortgage ?
The material facts are as follows: The note is negotiable, and McClelland is a purchaser in good faith and for a valuable consideration, but after maturity. He purchased from Smith, in the usual course of business, who was in possession of the note, duly indorsed by the payee, and of the mortgage given to secure it. Smith was a banker engaged in buying and selling such paper. Mrs. Osborn, the maker of the note, has no defense to its payment to the person entitled to receive the money.
Mrs. Faxon, the payee and owner of the note before its maturity, indorsed and delivered it, with the mortgage, to Smith, of the firm of Bartlit & Smith, bankers, for the purpose of enabling that firm to raise money for their own use for a short period of time, and with the understanding and agreement that the note should be returned by them to the indorser within thirty days. The note and mortgage were not used by Bartlit & Smith. After the time limited for the return of the note to Mrs. Faxon, Bartlit died, but the note and mortgage remained in the possession of Smith, until after maturity, when it was transferred to McClelland, who had no notice of the circumstances of Smith’s possession, or of the fact that he had no title.
I assume for the present that the original action on the mortgage, brought by McClelland against Mrs. Osborn, must be maintained, if an action on the note could be maintained.
Promissory notes made payable to bearer, assigns, or order, are made negotiable by statute, and are alike negotiable after maturity as before maturity. The difference between negotiation before and after maturity is this: If before maturity the indorsee takes it free from defenses unknown to him; if, after maturity, the transferee takes it subject to any defense which the maker could have set up against the original payee. Section 3173 of Revised Statutes.
*309 In this case it is not claimed that the maker has any defense that could be set up against the payee. The matter set up by way of defense by the maker, as well as by the payee (who has been made a party to the suit), is in denial of the plaintiff’s (McClelland’s) ownership of the note and mortgage. This defense would be alike available if the transfer to McClelland had been before maturity, as after maturity. It would be alike available, whether the note were negotiable or non-negotiable.
The law merchant, as it is commonly called, or the statute in regard to negotiable instruments, has no special application in this case. It is a mere question of ownership ; nothing more, nothing less.
The possession of the note, indorsed by the payee, and of the mortgage securing the noto, is prima facie evidence that the holder (McClelland) is the owner of the same. I admit that this prima facie evidence may be rebutted, either by Mrs. Osborn, the maker, or Mrs. Eaxon, the payee; and I further admit that as between Mrs. Eaxon, the payee, and Smith, who received the note and mortgage from Mrs. Eaxon, there was no authority in Smith to transfer the same to McClelland.
But the controversy here is between Mrs. Eaxon and the plaintiff', McClelland. One or the other must suffer from the unauthorized transfer by Smith. Upon which does the law east the loss? If either of these parties were careless, and the loss can be attributed to his or her carelessness, it certainly should be cast on the careless party. Let us see. McClelland found the note and mortgage in the possession of Smith. Their execution by Mrs. Osborn, for a valuable consideration, to Mrs. Eaxon, is admitted. The note was indorsed by Mrs. Eaxon. The genuineness of the note is admitted. Smith, proposed to transfer them to McClelland. His (Smith’s) possession was prima facie evidence of his ownership. McClelland acted on faith that the facts were as they appeared to be. Reasonable prudence did not require him to make inquiry into facts which were not in strict correspondence with appearances.
*310 Who was responsible for the appearances in so far as they were not in conformity to the facts ? I think there can be no doubt as to the answer to this question. Mrs. Eaxon clothed Smith with the indicia of ownership. McClelland was misled by the indorsement of Mrs. Eaxon.
The general indorsement of the note and its delivery, with the mortgage, to Bartlit & Smith, and permitting the same to remain with Smith for a long time thereafter by Mrs. Eaxon, was the act of carelessness and imprudence to which the loss, now to be adjusted, must be directly attributed, and Mrs. Eaxon should be estopped from denying the title and ownership of Smith as against McClelland, who was misled by the indicia of title with which Mrs. Faxon had clothed Smith.
It is said relief by foreclosure of a mortgage may be denied, where an action on the note, to secure which the mortgage was executed, would be maintained under the doctrine of Bailey v. Smith, 14 Ohio St. 396. I have no inclination to dispute the doctrine of that ease, which is, that an infirmity in a negotiable promissory note, which can not be set up against an innocent indorsee before maturity, and for value in an action on the note, may nevertheless prevail against a mortgage given to secure the note. The ground of the decision is, that a mortgage is a mere non-negotiable chose in action, and is not exempt from defenses in the hands of an assignee which could not prevail against the negotiable promissory note, to secure which it was executed, in the hands of an innocent indorsee for value before maturity. I think it is enough to say on this point, that the doctine of Bailey v. Smith can have no application in the case before us.
I admit my inability to reconcile the decision in Foley v. Smith, 6 Wall. 492, with the views above expressed. The question decided in that case, however, is not a federal one, and can not be regarded in the light of authority, which this court is bound to follow, further than the logic of the case commands respect and submission. No one is more ready than myself to acknowledge the exalted char *311 acter of the court that decided Foley v. Smith, or the distinguished ability of the judge who delivered the opinion, but I must be pardoned for saying that the reasoning of the opinion is not convincing to my mind.
On the other hand, in a recent case decided in this state by the supreme court commission, Combes v. Chandler, 33 Ohio St. 178, the doctrine contended for in this dissenting opinion is maintained by very satisfactory reasoning. The law is thus laid down in the syllabus of the case by a unanimous court: “ A bona fide purchaser for value of a non-negotiable chose in action from one upon whom the owner has, by assignment, conferred the apparent absolute ownership, when the purchase is made upon the faith of such apparent ownership, obtains a valid title as against the real owner, who is estopped from asserting title thereto.”
A distinction is sought to be drawn between Combes’ case and the one at bar, in this, that in Combes’ case it is said in the opinion that the payee, when lie indorsed the notes, intended to part with the title and ownership, while in the case at bar, Mrs. Eaxon, when she indorsed and‘delivered the note, did not intend to part permanently with the title or ownership. This distinction made no difference as to subsequent transferees, who had no knowledge of intention in either case except such as the law implies from the act of indorsement, which was alike in both instances, an indorsement in blank.